CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED
2017 JUN -1 PM 3: 18
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ROBERT MICHAEL HOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-CV-0025-BL |
| | ) | |
| JONES COUNTY JAIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff sues Jones County Jail ("the Jail") and various staff members for events that occurred between May and June 2015. Plaintiff has filed a Consent to Proceed Before a United States Magistrate Judge. *See* Doc. 8. After reviewing the law and complaint, as amended by Plaintiff's Answers to Magistrate Judge's Questionnaire ("MJQ"),[1] the Court finds that Plaintiff has stated no claim that survives summary dismissal.

### I. BACKGROUND[2]

In February 2016, Plaintiff filed a one page complaint suing Jones County Jail for unspecified civil rights violations and unconstitutional conditions based upon the Jail placing him in a top bunk, a fall from the bunk resulting in an arm injury, and a failure to provide medical attention. *See* Compl. (doc. 1). At the request of the undersigned, Plaintiff answered questions intended to flesh out the factual and legal bases for his claims. *See* Answers to MJQ (doc. 9).

---

[1] Providing answers to questions posed by the Court constitutes an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

[2] The factual background is taken from Plaintiff's complaint as supplemented by his answers to the questionnaire. For purposes of screening, the Court views Plaintiff's factual allegations in accordance with *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Because the Jail appears to be a non-jural entity that is not subject to suit, Plaintiff listed the following new defendants: Deputy Jailer Eric Lozano, Sheriff Moor, Deputy Stewart, and unidentified nursing staff. *See* Answer to Question 1 of MJQ. Although the question asked Plaintiff to provide an address for each listed new defendant and to provide all facts supporting a claim against any listed defendant, Plaintiff simply listed the new defendants without further elaboration. *See id.*

The Jail housed Plaintiff between August 2014 through June 2015, when he was released after serving out his tickets.[3] *See* Answer to Question 4 of MJQ. The events leading to this litigation occurred between May 1 and June 16, 2015.[4] *See* Answer to Question 3 of MJQ. When asked what medical treatment he received related to the events of his complaint, Plaintiff said that (1) he "was taken to the nurse's office" after his fall; (2) deputies documented the fall and told him that the nurse would see him in the morning; and (3) the nurse did not see him "until the next week" and, even then, she said he "was fine." *See* Answer to Question 5 of MJQ.

Plaintiff alleges that his fall caused "lots of back, leg, arm pain that has made [his] already bad condition worse." *See* Answer to Question 6 of MJQ. He "believe[s]" that medical care "would have helped" so that he could have explained to a doctor that he was disabled and should not be put on a top bunk. *See* Answer to Question 7 of MJQ. Despite his fall, the Jail still assigned him a top bunk, but "luckily an inmate gave [him] his bottom bunk." *See id.* He also states that he "could have been diagnosed by the proper medical help." *Id.*

---

[3] Plaintiff provided only the months of incarceration, but the Court is able to determine the years from the record as a whole.

[4] The Court determined the year of the events by considering the record as a whole.

2

With his answers to the MJQ, Plaintiff provides nine pages of medical records, a DVD-R, and five CDs from the Radiology Department of Hendrick Medical Center (an undated one and others dated July 14, 2015; July 15, 2015; August 11, 2016; September 22, 2016). Although Plaintiff does not refer to the medical records in his MJQ answers, the Court has reviewed them to see whether they facially support his claims. From the submissions, the Court reasonably infers that Plaintiff began seeking medical care about a month after his release in mid-June 2015. The covers of the CDs indicate radiology visits in July 2015, August 2016, and September 2016. The attached medical records show that Plaintiff had a prior "crush injury to the right arm that he suffered in 2008" which has required multiple surgeries and a July 2012 x-ray of a fractured arm. Records of Daniel L. Munton, M.D., show that Plaintiff was a new patient on September 17, 2015. In July 2016, Plaintiff received treatment from the West Texas Back Clinic.

Records from Steven W. Brown, M.D. reflect treatment in August and October 2016. More specifically, they show that Plaintiff received treatment in 2016 for thoracic spine pain resulting from a May 2015 fall from a bunk bed, including (a) an x-ray of thoracic spine on July 20, 2016, showing possible compression deformity with loss of disc height; (b) an August 10, 2016 MRI of the thoracic spine that shows no fracture, stenosis, or neural foraminal narrowing, but shows "relatively healthy" discs with "what appears to be a syrinx in multiple locations." Dr. Brown noted that Plaintiff's thoracic spine looks very healthy structurally and he doubted that Plaintiff would benefit from any neurosurgical intervention. He recommended further evaluation of the syrinx. A September 2016 MRI of the thoracic spine shows some degenerative changes but no abnormal enhancement or need for surgical intervention. Dr. Brown recom-

mended that Plaintiff return to Dr. Munton "for further nonoperative treatment of his spine pain."

Per his answers to the Court's questionnaire, Plaintiff asserts three claims: (1) a violation of the Americans with Disabilities Act ("ADA") for the assignment to the top bunk, (2) a civil rights violation based upon denial of proper medical treatment, and (3) negligence for putting him on the top bunk. *See* Answers to Questions 8 and 9 of MJQ. He seeks monetary damages for his claims. *See* Compl. at 1.

## II. PRELIMINARY SCREENING

The Court has permitted Plaintiff to proceed *in forma pauperis* in this action. His complaint is therefore subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim "lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)).

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

## A. Jural Entity

Plaintiff originally brought this action only against the Jones County Jail. Because courts should alert plaintiffs who proceed without counsel and provide them an opportunity to amend when they name a non-jural entity as a defendant, *see Parker v. Fort Worth Police Dep't*, 980 F.2d 1023, 1026 (5th Cir. 1993), the Court informed Plaintiff that the Jail appeared to be a non-jural entity that is not subject to suit, *see* Question 1 of MJQ. In response, Plaintiff listed various individuals as defendants. *See* Answer to Question 1 of MJQ. Consequently, it appears that Plaintiff has abandoned his claims against the Jail.

Nevertheless, to the extent Plaintiff continues to sue the Jail, he "seeks recovery from a legal entity that does not exist for his purposes." *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir. 1991) (addressing issue with respect to a police department). To sue "a servient political agency or department," such as a county jail, the agency or department must enjoy

"a separate and distinct legal existence." *Seale v. Dallas Cnty.*, No. 3:15-CV-3981-L, 2016 WL 3211789, at *2 (N.D. Tex. May 5, 2016) (recommendation of Mag. J. addressing Dallas County Jail), *accepted by* 2016 WL 3166792 (N.D. Tex. June 7, 2016). Absent "explicit steps . . . to grant the servient agency with jural authority" by "the true political entity," a governmental agency or department "cannot engage in any litigation except in concert with the government itself." *Darby*, 939 F.2d at 313. Because county jails lack jural authority, any claims against the Jones County Jail must be dismissed as frivolous. Non-jural entities are not proper defendants even for claims under the ADA. *See Hill v. City of Phoenix*, No. CV-13-02315-PHX-DGC, 2014 WL 4980001, at *2 (D. Ariz. Oct. 6, 2014); *Jones v. Imaginary Images, Inc.*, No. 3:12-CV-217, 2012 WL 3257888, at *7 (E.D. Va. Aug. 8, 2012).

## B. ADA Claims

Plaintiff asserts ADA claims against various defendants. However, the ADA does not permit claims against individual defendants. *Shabazz v. Texas Youth Comm'n*, 300 F. Supp. 2d 467, 473-74 (N.D. Tex. 2003). It only "provide[s] for relief against public entities." *Coker v. Dallas Cnty. Jail*, No. 3:05-CV-005-M-BH, 2009 WL 1953038, at *16 n.11 (N.D. Tex. Feb. 25, 2009) (recommendation of Mag. J. citing 42 U.S.C. § 12131), *accepted as modified by* 2009 WL 1953037 (N.D. Tex. July 6, 2009). Consequently, Plaintiff's ADA claims are frivolous. Furthermore, because Plaintiff "has failed to allege that he was discriminated against on the basis of disability in a major area of public life," his ADA claims fail to state a plausible claim upon which relief can be granted. *See Jefferson v. Loftin*, No. 3:04-CV-1102, 2005 WL 4541891, at *6 (N.D. Tex. Mar. 16, 2005) (accepting recommendation of Mag. J.).

## C. Denial of Medical Care

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that he was denied proper medical treatment. In his complaint, he states that he injured his arm when he fell from his assigned top bunk and reported the injury "to the nurse who did not believe me and failed to properly get me medical help." Compl. at 1. The nurse told him that he "needed to bond out if [he] needed to see a doctor." *Id.* He believes that unspecified medical staff and some officers "are responsible for [his] injuries" and he should be compensated for "the medical negligence and cruelty." *Id.*

In answer to the Court's questionnaire, Plaintiff lists three specific individual defendants – Deputy Jailer Lozano, Sheriff Moor, and Deputy Stewart – and unnamed nursing staff. *See* Answer to Question 1 of MJQ. Although the Court asked Plaintiff to provide all facts supporting a claim against each listed defendant, Plaintiff provided no such facts. *See id.* In response to a later question, Plaintiff stated that following his fall, he went to the nurse's office, deputies documented the fall and told him a nurse would see him in the morning, but she did not see him until the next week and even then she said he "was fine." *See* Answer to Question 5 of MJQ.

Plaintiff provides absolutely no facts to support a denial-of-medical-care claim against any of the specifically named individual defendants. His facts do not even mention the Sheriff and the only involvement of the Deputies show them taking him to the nurse's office and documenting his fall. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). An individual defendant "cannot be liable under § 1983" without being involved in the acts that allegedly violated the plaintiff's rights. *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016).

7

Moreover, even assuming personal involvement by the named individual defendants, Plaintiff's allegations fail to state a constitutional violation for denial of medical care. While it is uncertain whether Plaintiff was a pretrial detainee or a convicted inmate during the relevant detention, the same deliberate indifference standard governs claimed denials of medical care whether brought by a convicted inmate under the Eighth Amendment or by a pretrial detainee under the Fourteenth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639, 643, 647-48 (5th Cir. 1996) (en banc). To state a claim for deprivation of medical care, a plaintiff must allege a deprivation that is "objectively, sufficiently serious" and that a prison official was "deliberately indifferent to the prisoner's health and safety." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013).

Deliberate indifference requires that "defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Id.* at 407-08. This is "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted). Neither negligence nor "disagreement with his medical treatment" constitutes deliberate indifference "absent exceptional circumstances." *Id.* An inmate can demonstrate a constitutional violation for denial of medical care "by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006).

Plaintiff has not alleged that any defendant was deliberately indifferent to his health and

safety. He has not alleged that any defendant refused to treat him, ignored his complaints, or intentionally treated him incorrectly. Although there was about a week's delay before Plaintiff saw a nurse, such a delay can only constitute a constitutional "violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Furthermore, although the nurse told Plaintiff that he would need to bond out if he wanted to see a doctor, he has not shown how any delay in seeing a doctor resulted in substantial harm.

When asked how the alleged denial of medical care affected the nature and extent of his injury, Plaintiff stated that he believed that seeing a licensed doctor would have allowed him to explain his disability so as to avoid a top bunk assignment and that he could have been diagnosed by "proper medical help." *See* Answer to Question 7 of MJQ. Neither of these allegations show any substantial harm from the delay in seeing the nurse, the delay in seeing a doctor, or the alleged denial of medical care in general. Notably, although Plaintiff retained his top bunk assignment after his fall, another prisoner gave Plaintiff his bottom bunk. *See id.* Because Plaintiff has alleged no facts indicating that any "delay in treatment substantially harmed him or exacerbated his injury in any way," the delay does not rise to the level of a constitutional violation. *See Atkins v. Sheriff's Jail Avoyelles Par.*, 278 F. App'x 438, 439 (5th Cir. 2008) (per curiam). The examining nurse found that Plaintiff was fine. Given the facts alleged, it appears that Plaintiff merely disagrees with that assessment.

The Court recognizes that Plaintiff has submitted medical records showing a problem with his thoracic spine. These subsequent medical records, however, are insufficient to show

a constitutional violation based upon any deprivation of medical care. Even assuming that the spine injury resulted from the fall, Plaintiff's allegations do not show that any delay or deprivation of medical care substantially harmed Plaintiff or exacerbated his injury.

For all of these reasons, Plaintiff's denial-of-medical-care claim fails to state a claim upon which relief can be granted.

**D. Negligence**

In his complaint, Plaintiff asserts a claim of medical negligence. Compl. at 1. In answer to the MJQ, he clarified that the basis for this claim was being assigned a top bunk. Answer to Question 9 of MJQ. To "state a claim for negligence under Texas law, a plaintiff must allege: (1) the defendant owed a legal duty to plaintiff, (2) the duty owed was breached, and (3) the breach proximately caused plaintiff's injury." *McWright v. Bank of Am., N.A.*, No. 3:13-CV-1345-N-BF, 2013 WL 6735013, at *6 (N.D. Tex. Dec. 23, 2013) (accepting recommendation of Mag. J.). Plaintiff has alleged insufficient facts to state a plausible negligence claim based on his bunk assignment. Although he alleges that his prior arm injury made him bottom bunk restricted, *see* Compl. at 1, he alleges no facts as to how he fell from the top bunk or that his arm injury contributed to the fall at all. Plaintiff's detention began in August 2014, but the fall did not occur until May 2015. The Court may reasonably infer from those facts that Plaintiff's arm injury did not preclude a top bunk assignment. With that inference, it appears doubtful that any defendant owed him a legal duty to assign him a bottom bunk. For these reasons, Plaintiff has not stated a negligence claim upon which relief may be granted.

## III. LEAVE TO AMEND

In general, courts should provide pro se litigants an opportunity to amend before dismissing a complaint. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Leave to amend is not required, however, when plaintiffs have already pled their "best case." *Id.* Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). In this case, Plaintiff has amended his complaint through his answers to the Court's questionnaire. He was given an opportunity to provide all facts supporting his claims against each listed defendant, but he did not do so. Accordingly, the Court finds that he has pled his best case and that there is no basis to permit another amendment.

## IV. CONCLUSION

After considering Plaintiff's complaint, his answers to the Court's questionnaire, the submitted medical records, and the applicable law, the Court dismisses this action pursuant to 28 U.S.C. § 1915(e)(2)(B). Some claims are frivolous and others fail to state a claim upon which relief may be granted.

IT IS SO ORDERED this 1st day of June, 2017.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE